FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 14, 2021

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELIJAH B.,[1] <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[2] <br><br> Defendant. | No. 2:20-CV-00020-SAB <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff's and Defendant's Motions for Summary Judgment, ECF Nos. 14 and 22. Plaintiff is represented by Dana Madsen.

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 1**

Defendant is represented by David Burdett and Tim Durkin. The motions were considered without oral argument. Having considered the briefing and the applicable law, the Court grants Plaintiff's motion and denies Defendant's motion.

## Jurisdiction

Plaintiff filed a disability insurance benefits application on March 28, 2018, alleging a disability onset date of June 1, 2015. Plaintiff's claims were initially denied on June 18, 2018, and again upon reconsideration on September 17, 2018. At Plaintiff's request, the ALJ held a hearing on August 7, 2019. On August 29, 2019, the ALJ issued an opinion affirming the denial of Plaintiff's claims for benefits.

Plaintiff requested review of the ALJ decision, which the Appeals Council denied on November 20, 2019. Plaintiff then filed a timely appeal with the United States District Court for the Eastern District of Washington on January 13, 2020. ECF No. 1. The matter is before this Court under 42 U.S.C. § 405(g).

## Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if his impairments are of such severity that the claimant is not only unable to do his previous work, but cannot, considering claimant's age, education, and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The steps are as follows:

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 2

(1) Is the claimant engaged in substantial gainful activities? 20 C.F.R. § 404.1520(b). Substantial gainful activity is work done for pay and requires compensation above the statutory minimum. *Id.*; *Keyes v. Sullivan*, 894 F.2d 1053, 1057 (9th Cir. 1990). If the claimant is engaged in substantial activity, benefits are denied. 20 C.F.R. § 404.1520(b). If he is not, the ALJ proceeds to step two.

(2) Does the claimant have a medically severe impairment or combination of impairments? 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. A severe impairment is one that lasted or must be expected to last for at least 12 months and must be proven through objective medical evidence. 20 C.F.R. § 404.1509. If the impairment is severe, the evaluation proceeds to the third step.

(3) Does the claimant's impairment meet or equal one of the listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity? 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404 Subpt. P. App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. *Id.* If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step. Before considering Step 4, the ALJ must first determine the claimant's residual functional capacity. 20 C.F.R. § 404.1520(e). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments.

(4) Does the impairment prevent the claimant from performing work he has performed in the past? 20 C.F.R. § 404.1520(f). If the claimant is able to perform his previous work, he is not disabled. *Id.* If the claimant cannot perform this work, the evaluation proceeds to the fifth and final step.

(5) Is the claimant able to perform other work in the national economy in view of his age, education, and work experience? 20 C.F.R. § 404.1520(g). The initial burden of proof rests upon the claimant to establish a *prima facie* case of

entitlement to disability benefits. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. *Id*. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful activity. *Id.*

## Standard of Review

The Commissioner's determination will be set aside only when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992) (citing 42 U.S.C. § 405(g)). Substantial evidence is "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), but "less than a preponderance." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The Court must uphold the ALJ's denial of benefits if the evidence is susceptible to more than one rational interpretation, one of which supports the decision of the administrative law judge. *Batson v. Barnhart*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court reviews the entire record. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). "If the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019.

A decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secr'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1988). An ALJ is allowed "inconsequential" errors as long as they are immaterial to the ultimate nondisability determination. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

//

//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 4

**Facts**

Plaintiff was 36 years old at the time of his alleged disability onset date, though he is now 42 years old. He is 5'7" tall, weighs 250 lbs., and is right-handed. Plaintiff is divorced and has custody of his two children, one who is elementary school aged and one who is high school or college aged. His educational experience consists of a high school diploma and some courses at community college. Before his alleged disability, Plaintiff worked in Human Resources, first in the U.S. Army and then in the National Guard. Plaintiff states that, while in the military, he was deployed to Iraq and then Afghanistan, where he was exposed to combat situations. Specifically, Plaintiff states that he experienced rocket attacks, had his squad vehicle blown up, and witnessed two close friends be seriously injured. Plaintiff was honorably discharged from the military after nearly 14 years of service.

In Plaintiff's application, he alleged that he had both physical and mental limitations. For physical limitations, Plaintiff alleged that he suffers back pain, which causes minimal to severe muscle spasms; pressure and stiffness in his neck; problems with his right shoulder; carpal tunnel syndrome, which causes occasional tingling and numbness in his fingertips and hand cramps; left hip and knee pain, which—in combination with his back pain—creates pain while sitting, walking, and performing other basic tasks; and migraines that come multiple times a month and last for 3-4 hours. Specifically, he stated that he can only write for 15 minutes at a time; sit and/or stand for 30 minutes at a time; drive a vehicle up to 15 miles; and walk up to 1/8 of a mile without extreme pain.

As for mental limitations, Plaintiff alleged that he has PTSD from his experiences in the military, which can be triggered by loud noises, whistling sounds, and flashbacks while driving his car. He also alleged that he experiences depression and anxiety, as well as nightmares and difficulty sleeping. He stated

that he only leaves the house approximately once a week and does not interact well with other people because he often becomes agitated and nervous.

## The ALJ's Findings

On August 29, 2019, the ALJ issued an opinion affirming denial of benefits. The ALJ concluded that Plaintiff's allegations were not consistent with the record and that Plaintiff could perform work that exists in significant numbers in the national economy. Thus, the ALJ held that Plaintiff was not disabled. Administrative Record ("AR") at 28.

At **step one**, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 1, 2015, the alleged disability onset date. *Id.* at 17.

At **step two**, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; obesity; posttraumatic stress disorder (PTSD); major depressive disorder; and unspecified anxiety disorder. *Id*. at 17-18.

At **step three**, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals any Listing. *Id.* at 18-20.

The ALJ concluded that Plaintiff had a residual function capacity to perform:
> a full range of light work as defined in 20 CFR 404.1567(b) except: he can only occasionally climb ladders, ropes, or scaffolds; he can frequently perform all other postural activities; he cannot have concentrated exposure to vibration or hazards (such as unprotected heights or moving mechanical parts); he is limited to a moderate noise environment; he cannot operate a motor vehicle; he can have only occasional contact with the public; and he cannot do fast-paced work.

*Id*. at 20.

At **step four**, the ALJ found that Plaintiff was capable of performing past relevant work as a Personnel Clerk, which did not require performance of work-related activities precluded by the claimant's residual functional capacity. *Id.* at 26.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 6

At **step five**, the ALJ found that, even if Plaintiff could not perform past relevant work, Plaintiff was not disabled and that he was capable of making a successful adjustment to other work that exists in significant numbers in the national economy, including Office Helper, Mail Clerk, or Office Cleaner. *Id*. at 27-28.

## Issues for Review

1. Did the ALJ err by improperly discrediting Plaintiff's subjective complaints about his symptoms?
2. Did the ALJ err by failing to properly weigh medical opinions from Dr. Mansfield-Blair and Dr. Rubin regarding Plaintiff's limitations?

## Discussion

1. <u>Did the ALJ err by improperly discrediting Plaintiff's subjective complaints about his symptoms?</u>

Plaintiff argues that the ALJ improperly discounted his subjective complaints about the nature and intensity of his limitations because the ALJ concluded that Plaintiff could still engage in daily activities (*e.g.*, prepare meals, clean, get around, drive his car, go shopping, handle finances, and take care of his two sons). ECF No. 14 at 15. However, Plaintiff argues that, under Ninth Circuit caselaw, a claimant's ability to perform daily activities does not necessarily detract from their credibility regarding the severity of their limitations. *Id.* at 16-18. Thus, Plaintiff argues that the ALJ's failure to properly consider his subjective complaints of limitations constitutes harmful error and requires remand. *Id.* at 18.

Defendant argues the ALJ provided five legally sufficient reasons to discount Plaintiff's credibility regarding his symptoms and that his findings are entitled to deference. ECF No. 17 at 14-17. Specifically, Defendant argues that the ALJ found that (1) Plaintiff's activities were inconsistent with his symptom complaints; (2) Plaintiff applied for work during the relevant period, which undermined his claim of disability; (3) Plaintiff was inconsistent in reporting his

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 7

symptoms; (4) Plaintiff's conservative treatment for back pain undermined the severity of his symptom complaints; and (5) Plaintiff had minimal objective evidence to support his symptom complaints. ECF No. 22 at 4-10. Thus, Defendant argues that the ALJ's finding that Plaintiff overstated his symptom complaints was supported by substantial evidence. *Id.* at 10.

### A. Legal Standard

The ALJ is responsible for making credibility determinations. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id*. (quoting *Lingenfelter*, 504 F.3d at 1036). In this analysis, the claimant is not required to show "that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of that symptom," *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). In addition, he need not produce "objective medical evidence of the pain or fatigue itself, or the severity thereof." *Id*.

Once a claimant has produced evidence of an impairment, the ALJ may not discredit testimony regarding symptoms simply by asserting that they are unsupported by objective evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006). Rather, the ALJ must provide specific, cogent reasons to find that the claimant is not credible. *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (citing *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990)). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 8

Cir. 2002). The Court will affirm the ALJ's reasoning so long as it is clear and convincing. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014). Daily activities may be grounds for an adverse credibility finding if (1) a claimant's activities contradict his other testimony, or (2) a claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). However, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair*, 885 F.2d at 603. Recognizing that "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations," the Ninth Circuit has held that "[o]nly if [a claimant's] level of activity were inconsistent with his claimed limitations would those activities have any bearing on his credibility." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

### B. Discussion

Here, the ALJ concluded that Plaintiff suffered from degenerative disc disease of the lumbar spine; obesity; posttraumatic stress disorder (PTSD); major depressive disorder; and unspecified anxiety disorder. AR at 17-18. However, the ALJ concluded Plaintiff only had mild to moderate limitations stemming from these impairments and that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 21-23.

First, the ALJ found that Plaintiff's actions indicated a relatively high level of functionality. For example, the ALJ considered evidence that Plaintiff had continued to apply for human resources jobs even after alleging disability; had been the sole caregiver for his 6- and 17-year-old sons, who reportedly have

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 9**

special needs; and had been working towards finishing his college degree. *Id.* at 21-22.

Second, the ALJ found that, for both Plaintiff's alleged physical and mental limitations, there was evidence in the record contradicting Plaintiff's allegations regarding his symptom severity. For example, despite Plaintiff's allegations of being unable to stand for more than 10 minutes; sit for long periods of time; lift more than 10 pounds; or sleep well due to back pain, the ALJ pointed to evidence in the record suggesting that Plaintiff went to the gym; used power equipment; slept well without interference from back pain; sat in his favorite chair as long as he liked; and could lift light to medium weights if conveniently positioned. *Id.* at 22. The ALJ also noted that the objective medical evidence did not support the severity of symptoms alleged—for example, the ALJ pointed out that Plaintiff's lumbar MRI from October 2017 only showed mild to moderate degenerative changes to the lumbar spine and that Plaintiff's treatment for his back pain had been conservative (*i.e.*, pain medication, chiropractic treatment). *Id.*

Similarly, for Plaintiff's allegations of PTSD, anxiety, and depression, the ALJ pointed to evidence in the record suggesting that Plaintiff's mental symptoms were stable on psychotropic medications and that he had continued to function at a high level (*e.g.*, caring for his sons, taking college courses full time, excelling in his classwork). *Id.* at 22-23. These incongruencies, along with the ALJ's assessment of medical expert opinions, led the ALJ to conclude that Plaintiff's symptoms and functioning were not as limiting as he claimed in his application. *Id.* at 26.

Having considered the ALJ's opinion, the Court finds that the ALJ erred in his credibility determination and improperly discounted Plaintiff's testimony regarding the severity of his limitations.

First, the Court finds that the ALJ's conclusion about Plaintiff's high level of functionality is not supported by substantial evidence. In his decision, the ALJ

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 10

pointed to many aspects of Plaintiff's behavior and activities that would seem to suggest a degree of functioning, such as taking care of his children, attending college courses, and seeking employment. AR 21-22. However, the ALJ failed to include important contextual information about Plaintiff's ability to perform these activities. For example, although Plaintiff testified that he was the primary caregiver for his two sons, he stated in his April 16, 2018 function report that, "I feel they are actually taking care of me." AR 40, 210. He also testified that he always took his kids with him during his monthly grocery shopping trips "in case something happened" and that his oldest son was responsible for heavy lifting, vacuuming, and most of the cleaning around the house. AR 55, 61; *see also id.* at 329 (where Plaintiff reported that grocery shopping/running errands was "barely tolerable" for him and that he ran in and out of the stores as fast as he could because he could not tolerate the people in line, especially behind him). As for Plaintiff's college courses, Plaintiff reported that he had to take three quarters off from college because of a mental breakdown. AR 41. Additionally, while attending college, Plaintiff reported that he had a hard time focusing; that certain classes and professors triggered his PTSD; and that he was feeling overwhelmed trying to manage his classes, children, and health issues. AR 436-37, 451, 456-57. Thus, the ALJ's depiction of Plaintiff as high-functioning individual is not supported by substantial evidence. Instead, the record shows that Plaintiff was struggling to handle all his responsibilities. Furthermore, Plaintiff's efforts to be a good father and to seek school and employment responsibilities should not be held against him—instead, the fact that Plaintiff tried to attend college and had to drop out supports his alleged limitations. *Lingenfelter*, 504 F.3d at 1038-39; *see also Reddick*, 157 F.3d at 722 ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations.").

Second, the Court finds that the ALJ's conclusion that Plaintiff's alleged symptom severity was inconsistent with the medical record is not supported by

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 11

substantial evidence. For example, when discussing Plaintiff's complaints about the severity of his back pain, the ALJ concluded that the medical record and objective medical findings were inconsistent with Plaintiff's alleged severity. AR 22. However, Plaintiff's medical records support that he had experienced low back pain—specifically, mid-low back spasms resulting in severe pain, tightness, and lack of functionality for days afterwards—since 2013. *See, e.g.*, AR 295 (during September 4, 2015 visit, doctor noted that Plaintiff had experienced "low back pain of 2 years duration"); *id.* at 334 (during April 24, 2015 physical exam for disability benefits, Plaintiff reported "gradual onset of low back pain since about 2013" and that back movements could cause "intermittent acute low back pain flareups for about 30 minutes and these episodes occur about twice monthly"); *id.* at 442 (during March 1, 2018 visit, Plaintiff reported "intermittent mid-back spasms, severe, last up to 5-10 minutes then leaves tightness of 1-2 days"); *id.* at 877 (during January 7, 2019 visit, Plaintiff reported severe back spasm while shopping).

Additionally, the ALJ discounted Plaintiff's credibility regarding the severity of his back pain because the ALJ found that Plaintiff's physical examinations were normal and that "treatment for the allegedly debilitating back pain has been limited and conservative (i.e., chiropractic treatment, pain medications)." AR 22. However, this is also not supported by substantial evidence. First, during Plaintiff's physical examination on April 24, 2015, Dr. Naylor noted multiple times that Plaintiff experienced muscle spasms in his back; had limited ranges of motion in his right knee/shoulder; and that these conditions would impact Plaintiff's ability to work. AR 335-367. Moreover, though Plaintiff received treatments at Houk Chiropractic Northwest, AR 403-29, 786-849, and had been prescribed nonsteroidal anti-inflammatory drugs (NSAIDs) and muscle relaxants for his back pain, AR 442, there are also multiple documented ER visits where Plaintiff was given more serious pain medications for his back pain. AR 306

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 12

(describing ER visit sometime in August 2015 for low back pain and cervical pain and where Plaintiff was treated with cyclobenzaprine and hydrocodone); *id.* at 447 (describing ER visit on September 13, 2017, where Plaintiff was treated with 60 mg of ketorolac).

As for Plaintiff's complaints about his PTSD, anxiety, and depression, the ALJ found that Plaintiff's mental limitations were not as severe as alleged because Plaintiff's mental symptoms were stable on psychotropic medications; he often reported that he was doing well and presented as unremarkable during mental status examinations; and he exhibited a day-to-day ability to function at a high level. AR 22-23. However, as already discussed above, the ALJ overstated Plaintiff's ability to function. Additionally, Plaintiff's medical records show that his success with medications and his ability to manage his PTSD, anxiety, and depression has not been stable or consistent. For example, during Plaintiff's March 2, 2018 psychiatrist visit, he reported that "he has experienced a great benefit from the use of quetiapine" in helping reduce his night terrors, improve his sleep quality, and boost his mood. AR 432-33. However, just over a month later, during Plaintiff's April 13, 2018 therapy visit, he reported that—though he was still taking the quetiapine—he was once again having bad dreams, experiencing continuous fatigue, and feeling like he was not making progress with facing his anxieties. AR 431. These kinds of two-steps-forward, two-steps-back examples appear throughout Plaintiff's medical records. *See, e.g.*, AR 910 (at his September 27, 2018 visit with a clinical pharmacist, Plaintiff reported that he "has felt much better in the last week, feeling like himself again which he hasn't felt in a long time"); *id.* at 896 (at his October 18, 2018 therapy visit, Plaintiff appeared "subdued" and stated that he was "lacking motivation"/was in a funk); *id.* at 873 (at his February 28, 2019 therapy visit, Plaintiff reported that he was "passing all classes" and "doing well with medications"); *id.* at 863 (at his March 25, 2019 therapy session, Plaintiff reported that "things have been rough for him with

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 13

anxiety and depression"); *see also id.* at 329-30 (Plaintiff stated that sometimes his anxiety was prohibitive and sometimes he could function better, but that it just depended on what was going on).

Because the ALJ ignored substantial evidence in the record supporting Plaintiff's allegations regarding the severity of his physical and mental limitations, the Court finds that the ALJ improperly discounted Plaintiff's credibility when considering his symptom testimony. Therefore, the Court remands this matter to the ALJ for further proceedings.

2. <u>Did the ALJ err by failing to properly weigh medical opinions from Dr. Mansfield-Blair and Dr. Rubin regarding Plaintiff's limitations?</u>

Plaintiff also argues that the ALJ failed to properly weigh the opinions of Dr. Karen Mansfield-Blair, Ph.D. ("Dr. Mansfield-Blair") and Dr. Steven Rubin, Ph.D. ("Dr. Rubin") in determining Plaintiff's residual function capacity. ECF No. 14 at 19. First, Plaintiff argues that Dr. Mansfield-Blair, unlike the doctors whose opinions the ALJ relied on in his decision, was an examining source and was actually able to personally interview, observe, and evaluate Plaintiff's presentation and subjective claims. *Id.* at 19. Plaintiff argues that these doctors' opinions were contrary to all other evidence in the record supporting Plaintiff's disability and that these opinions did not supersede Mr. Mansfield-Blair's opinion. *Id.* Plaintiff also argues that, though the ALJ relied on Dr. Rubin's proposed mental limitations for Plaintiff in his opinion, the ALJ disregarded Dr. Rubin's statement that Plaintiff would be absent from work one to two days a month due to his disability. *Id.* Thus, Plaintiff argues that the ALJ's failure to properly weigh these two opinions constitutes harmful error and requires remand. *Id.* at 20.

First, Defendant argues that, under the new regulations governing Social Security disability determinations, the ALJ is no longer required to give special deference to the opinions of treating doctors. 20 C.F.R. § 404.1520c. ECF No. 22 at 11. Thus, Defendant argues that, under the new regulations, the ALJ properly

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . . # 14**

rejected Dr. Mansfield-Blair's conclusion as inconsistent with her examination and insufficiently supported by specific medical evidence or the remainder of the medical record. *Id.* at 15-18. Second, Defendant argues that the ALJ properly rejected Dr. Rubin's statement about Plaintiff's potential absenteeism from work because Dr. Rubin himself acknowledged that this statement was speculative. *Id.* at 14-15.

### 1. Dr. Mansfield-Blair

For Social Security disability claims filed on or after March 27, 2017, the ALJ "will not defer or give[] any specific evidentiary weight . . . to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, when evaluating the persuasiveness of medical opinions, the two most important factors for the ALJ to consider are supportability and consistency. *Id.* However, an ALJ must also consider the medical source's relationship with the claimant; the length of the treatment relationship between the claimant and the medical source; the purpose of the treatment relationship; the extent of the treatment relationship; whether the medical source had an examining relationship with the claimant; the medical source's specialization; and other factors that might make a medical opinion more or less persuasive. *Id.* at (c).

In her report, Dr. Mansfield-Blair, a consultative evaluating psychologist who examined Plaintiff on November 11, 2018, concluded that—while Plaintiff would not have difficulty performing simple and repetitive tasks; accepting instructions from supervisors; interacting with coworkers; or performing work activities on a consistent basis—Plaintiff would have difficulty performing detailed and complex tasks; maintaining regular attendance; and dealing with usual levels of stress in the workplace. AR 850, 854-55. Dr. Mansfield-Blair based these conclusions on Plaintiff's mental health symptoms, his diagnoses, and his exhibited distress tolerance skills during the interview. *Id.* at 855.

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 15

The ALJ found that the opinion of Dr. Mansfield-Blair was "somewhat persuasive but suffers from some deficiencies and indicates a degree of mental impairment that is generally not consistent with the record as a whole." Specifically, the ALJ rejected Dr. Mansfield-Blair's conclusions about Plaintiff's limitations in the workplace because (1) Plaintiff exhibited a high level of intellectual functioning and performance on memory tasks during the interview, suggesting that he would be capable of performing detailed and complex tasks at work; (2) Dr. Mansfield-Blair's conclusions were based solely on Plaintiff's "diagnoses," which is not a valid basis for a medical opinion; and (3) her opinion failed to quantify Plaintiff's alleged difficulties. AR 25.

The Court finds that Dr. Mansfield-Blair's conclusion that Plaintiff would have difficulty performing detailed and complex tasks, maintaining regular attendance, and dealing with usual levels of stress in the workplace is supported by the record. For example, it appears that difficulties focusing, dealing with stress, and ensuring regular attendance have all contributed to Plaintiff's struggles to finish his college degree. AR 209 (Plaintiff reporting that he had troubles concentrating in his college coursework and failed a course because of it), 230-31 (Plaintiff's stepmother also reporting that he tried to take college courses, but that he struggled and failed courses because he could only concentrate for short periods of time), 436-37, 451, 456-57.

Because the ALJ's conclusion that Dr. Mansfield-Blair's assessment was inconsistent with the record is not supported by substantial evidence, the Court finds that the ALJ erred by giving insufficient weight to Dr. Mansfield-Blair's opinions regarding Plaintiff's limitations. Thus, the Court remands this matter to the ALJ for further proceedings.

**2.      Dr. Rubin**

The ALJ found that the opinion of Dr. Rubin was "largely persuasive." *Id.* at 23. Specifically, the ALJ adopted Dr. Rubin's proposed findings that Plaintiff

had mild limitations in concentrating, persisting, maintaining pace; had moderate limitations in interacting with others; and should avoid fast-paced work to reduce stress. *Id.* But the ALJ rejected Dr. Rubin's estimate that Plaintiff may miss one or two days of work per month because Dr. Rubin himself stated that this was speculative. *Id.* at 23-24.

The Court upholds the ALJ's decision regarding Dr. Rubin's testimony. Defendant is correct in noting that, when Dr. Rubin was asked about the basis for his guess that Plaintiff would miss a few days of work each month due to his psychological symptoms, Dr. Rubin admitted that he had no way of coming up with an exact number and that guessing at one would be too speculative. AR 47-48. Therefore, the ALJ's decision to reject Dr. Rubin's testimony was supported by substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Summary Judgment, ECF No. 14, is **GRANTED.**

2. Defendant's Motion for Summary Judgment, ECF No. 22, is **DENIED**.

3. The decision of the Commissioner is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this Order. On remand, the ALJ shall reconsider (1) Plaintiff's subjective complaints about the nature and intensity of his limitations; and (2) Dr. Mansfield-Blair's opinions regarding Plaintiff's limitations. This remand is made pursuant to sentence four of 42 U.S.C. § 405(g).

4. The District Court Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

//
//
//

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 17

5. Plaintiff is permitted to request reasonable attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d).

**IT IS SO ORDERED.** The District Court Clerk is hereby directed to file this Order, provide copies to counsel, and **close** the file.

**DATED** this 14th day of July 2021.



Stanley A. Bastian
Chief United States District Judge

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT . . .** # 18